UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01104-MJD-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant John F. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in August 2018, alleging an onset of disability as of September 2, 2015. [Dkt. 15-5 at 16.] Claimant's applications were denied initially and again

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

upon reconsideration, and a hearing was held before Administrative Law Judge Livia Morales ("ALJ") on February 12, 2020. [Dkt. 15-2 at 30.] On March 26, 2020, ALJ Morales issued her determination that Claimant was not disabled. *Id.* at 10. The Appeals Council then denied Claimant's request for review on February 26, 2021. *Id.* at 2. On April 30, 2021, Claimant timely filed his Complaint in this Court seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 CFR pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 CFR § 404.1520. Between steps three and four, the ALJ must assess the

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On review, this Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Morales first determined that, although Claimant had engaged in substantial gainful activity after his alleged onset date, there was a 12-month continuous period without substantial gainful activity. [Dkt. 15-2 at 15.] At step two, the ALJ found that Claimant had the following severe impairments: "right shoulder rotator cuff tear, with arthroscopic surgery (as of August 2017); lumbar spine disorder, with radiculopathy (as of April 2018); and sacroilitis [sic] (as of July 2019)." *Id.* at 16. The ALJ determined that Claimant's bronchitis, otitis media, hypertension, hyperlipidemia, history of bilateral inguinal hernia repair, partial rotator cuff tear of the left

shoulder, and obesity were non-severe conditions; Claimant's depression disorder with anxious distress, post-traumatic stress disorder (PTSD), insomnia disorder, tobacco use disorder, and bereavement were found to be medically determinable impairments yet non-severe. *Id.* at 16-17. At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. *Id.* at 18. ALJ Morales then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except starting in August 2017, he can lift and carry up to 10 pounds with the right upper extremity; occasionally reach overhead and frequently reach in all other directions with the right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights, frequently work around moving mechanical parts, and frequently operate a motor vehicle; and starting in April 2018, he can walk and stand for four hours in an eight-hour workday.

*Id.* at 19.

At step four, ALJ Morales found that Claimant was unable to perform any of his past relevant work during the applicable time period. *Id.* at 23. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as folder (DOT 369.687-018), information clerk (DOT 237.367-018), and mail clerk (DOT 209.687-026). *Id.* at 24. Accordingly, ALJ Morales determined that Claimant was not disabled. *Id.* at 25.

### IV. Discussion

Claimant is an Air Force veteran who, after serving multiple deployments to the Middle East, was honorably discharged in 2014. In support of his request to reverse the decision below, Claimant argues that ALJ Morales erred by failing to reconcile Claimant's inability to engage in prolonged sitting, standing, or walking with her RFC assessment that Claimant could perform light work, which requires prolonged standing and walking. [Dkt. 19 at 8.] The Commissioner

responds that reversal is inappropriate because substantial evidence supports the ALJ's RFC determination. [Dkt. 20.] As explained below, the Court agrees with Claimant that ALJ Morales' decision must be reversed.

> Light work, by definition,
>
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567(b). An individual needing to alternate between periods of sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work." SSR 83-12, 1983 WL 31253, at *4. The issue here is thus whether the ALJ considered Claimant's alleged need to alternate between sitting and standing at will.

At his February 12, 2020, hearing, Claimant averred, in part, that his lower back injuries limit his ability to walk, stand, sit, lift, bend, and twist.[3] [Dkt. 15-2 at 47.] He testified that the pain, which he rated as a 5/10 to 7/10 daily, concentrated around the L4, L5, S1, and S2 vertebrae, radiated to his right leg and foot, and was exacerbated by prolonged standing, prolonged sitting, and walking. *Id.* at 48-49. Claimant testified that he was able to walk for four-to-six minutes at a time, or "30 to 40 yards before the burning sensation comes on," at which point he needed to stop and rest for at least 10 minutes; he was able to stand for three-to-four minutes at a time, at which point burning, numbness, and tingling in his right leg forced him to

---

[3] Claimant also alleges numerous limitations stemming from his shoulder injuries, but since the narrow issue at hand involves sitting, standing, and walking, the Court focuses only on Claimant's back issues.

sit down for at least 10 minutes; and he was able to sit for 10-to-12 minutes at a time before needing to stand up. *Id.* at 49-50. He further testified that when walking, his right foot would drop causing him to trip. *Id.* at 56. Claimant explained that he took hydrocodone twice a day and used a TENS unit, but the TENS unit only helped for about 15-to-30 minutes, and the hydrocodone "doesn't alleviate the pain" but "makes it tolerable." *Id.* at 50-51. Claimant's hearing lasted one hour and 25 minutes. About half way through, Claimant asked for permission to stand up because of the pain. *Id.* at 54. Shortly after, he requested to change positions again. *Id.* at 59.

On November 24, 2018, consultative examiner Gregory French, MD, found, in pertinent part, that Claimant had decreased range of motion in his lumbar spine, noting it was likely a result of degenerative disc disease or degenerative joint disease. [Dkt. 15-7 at 155-56.] Dr. French opined that Claimant was "[a]ble to sit, stand, and walk; non-prolonged" and "[a]ble to lift, carry objects <10 lbs." *Id.* at 156. The ALJ found this opinion "partially persuasive," explaining that "Dr. French's opinions that the claimant is not able to sit, stand, or walk on a prolonged basis is generally consistent with the record" and "supportable, as objective findings support the conclusions."[4] [Dkt. 15-2 at 22.]

The ALJ found that the medically determinable impairments of "right shoulder rotator cuff tear, with arthroscopic surgery (as of August 2017); lumbar spine disorder, with radiculopathy (as of April 2018); and sacroilitis [sic] (as of July 2019)" significantly limit

---

[4] The ALJ found Dr. French's opinion only "partially persuasive" because, she states, "Dr. French's opinions related to sitting, standing, and walking are vague and not in vocationally relevant terms." [Dkt. 15-2 at 22.] Contrary to ALJ Morales' assertion, however, there is nothing vague about Dr. French's determination that Claimant is "[a]ble to sit, stand, and walk; non-prolonged." Further, to the extent the ALJ faults Dr. French for not providing an opinion in "vocationally relevant terms," there is no requirement that he must do so. *See* 20 CFR § 404.1519n. Moreover, as Claimant points out, SSR 83-12 uses the exact term "prolonged standing" to describe the requirement of light work.

Claimant's ability to perform basic work activities, and thus constitute severe impairments. *Id.* at 16. The ALJ then determined Claimant was capable of light work with some restrictions. *See id.* at 19. Specifically, the ALJ found that, "starting in April 2018, he can walk and stand for four hours in an eight-hour workday."[5] *Id.* Claimant argues that this statement "offers no clarity as to [Claimant's] functional capacity for standing and walking from September 2, 2015, the alleged onset date, through April of 2018," nor "does it clarify for how long [Claimant] was capable of sitting during the relevant period." [Dkt. 19 at 8-9.] The Court agrees.

"[R]emand may be appropriate when—despite evidence of a functional limitation—the ALJ fails to assess a claimant's ability to perform that function." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). Here, as noted, Claimant alleged an inability to sit, stand, and walk for prolonged periods. This allegation is supported by Dr. French's opinion, which the ALJ accepted, as well as objective medical evidence and other evidence throughout the record. ALJ Morales also acknowledged Claimant's testimony that "he is limited to lifting about five pounds, no overhead lifting, walking about 30 to 40 yards, standing about three to four minutes, and sitting for about 10 to 12 minutes; he cannot do any bending or twisting." [Dkt. 15-2 at 20.] Nonetheless, the ALJ's RFC determination does not appear to account for Claimant's inability to stand and walk for prolonged periods post-April 2018, makes no reference whatsoever to Claimant's inability to sit for prolonged periods, and provides no insight regarding these (in)abilities pre-April 2018.

---

[5] It appears that the ALJ highlights April 2018 because that is the time at which Claimant received a post-lumbar spine MRI diagnosis of "degenerative disc disease and facet arthrosis of the lower lumbar spine, slightly worsened in appearance at L4/L5 compared to prior exam, now with moderate bilateral neural foraminal stenosis." [Dkt. 15-7 at 132.] The Court notes, however, prior diagnoses include "lumbosacral strain/chronic low back pain since 2010, degenerative arthritis of the spine/lumbosacral osteoarthritis since 2010, and intervertebral lumbar disc syndrome since 2015," *id.* at 47-48 (October 2016), and "minimal L4-L5 lumbar degeneration," *id.* at 132-33 (March 2018).

While ALJ Morales found that "starting in April 2018, he can walk and stand for four hours in an eight-hour workday," *id.* at 19, it is unclear whether the ALJ considered a limitation which allowed Claimant to alternate between positions—a limitation that the VE testified would preclude all work. Indeed, according to the VE, alternating between sitting for 10 minutes and standing or walking for 30 minutes throughout the workday would be "work preclusive" because an employed individual "really would need to remain in [a] sit or stand position for 20 to 30 minutes at a time." *Id.* at 67; *cf.* SSR 83-12, 1983 WL 31253, at *4.

In response, the Commissioner argues that "the ALJ did not accept [that Claimant's] symptoms limited him from engaging in prolonged standing and walking; nor did she find [Claimant] needed a sit-stand option."[6] [Dkt. 20 at 13.] However, as noted above, the ALJ

---

[6] Here, the Commissioner briefly seems to argue that the reason the ALJ failed to address Claimant's alleged sit-stand option was because she rejected Claimant's subjective symptoms. Claimant does not address this argument, but since the issue is likely to arise on remand, the Court notes that the ALJ's subjective symptom evaluation is not based on substantial evidence. For example, ALJ Morales states that Claimant's "daily activities suggest his conditions are not as limiting as alleged." [Dkt. 15-2 at 20.] However, the ALJ ignores Claimant's testimony and other evidence in the record about how those activities are performed as a result of his limitations. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (error for the ALJ to ignore the claimant's "qualifications as to *how* he carried out those activities") (emphasis in original). Moreover, the Seventh Circuit has routinely admonished that "[t]he 'sporadic performance [of household chores or work] does not establish that a person is capable of engaging in substantial gainful activity.'" *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). The ALJ further discredits Claimant's statements on the grounds that he "treated the problems with chiropractic sessions, physical therapy, injections, medications, and electrical stimulation," and for declining additional injections. [Dkt. 15-2 at 20.] These assertions, however, ignore that these were failed, or at the very least unsatisfactory, attempts at treatment. *See, e.g.,* [Dkt. 15-7 at 48] ("Has been treated with physical therapy and lumbar epidural blocks x2 with no significant alleviation."); *id.* at 5 ("Therapy has not helped very much."); *id.* at 7 ("The patient has failed conservative measures of treatment including acetaminophen, OTC NSAIDs, rest, and physical therapy."); *id.* at 203 ("[H]e has completed physical therapy in the past year without any improvement in pain. He has had spinal or back injections previously which did not last long and he does not desire to have them again."). On remand, the ALJ shall be sure to evaluate Claimant's subjective symptoms in adherence with SSR 16-3p, and any reasons for rejecting Claimant's statements must be grounded in fact and articulated in the decision.

accepted consultative examiner Dr. French's opinion that Claimant was unable to sit, stand, and walk for prolonged periods because it was "generally consistent with the record" and "supportable, as objective findings support the conclusions." [Dkt. 15-2 at 22.] In addition to this contradiction, the problem is that the ALJ failed to provide a narrative linking the evidence to her determination that Claimant could "walk and stand for four hours in an eight-hour workday" beginning in April 2018. As Claimant appropriately underscores, the ALJ's analysis "was deficient in that it is entirely unclear how the ALJ reconciled [her] finding that [Claimant] cannot sit, stand, or walk, for prolonged periods of time, with the RFC for work that requires such ability." [Dkt. 21 at 3.]

      Accordingly, remand is necessary because, despite well-supported allegations of a functional limitation, ALJ Morales failed to articulate an assessment of Claimant's (in)ability to sit, stand, and/or walk for prolonged periods. *Jeske*, 955 F.3d at 596. This is especially egregious for the ALJ to have overlooked, since the VE testified that alternating between sitting for 10 minutes and standing or walking for 30 minutes throughout the workday would be "work preclusive." [Dkt. 15-2 at 67]; *cf.* SSR 83-12, 1983 WL 31253, at *4. ALJ Morales wholly failed to explain her determination, or point to evidence supporting her determination, that Claimant would not require this type of work-preclusive sit-stand option. Further, her implicit rejection of the need for a sit-stand option contradicts her express statement that Dr. French's opinion was "generally consistent with the record" and "supportable." [Dkt. 15-2 at 22.] These errors cannot withstand review. On remand, the ALJ must craft the RFC by "incorporat[ing] all of the claimant's limitations supported by the medical record," *Crump*, 932 F.3d at 570, and must build

a factually accurate "logical bridge" between her conclusions and the evidence, *Varga*, 794 F.3d at 813.[7]

### V.  Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  17 MAY 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.

---

[7] Having found other reasons to reverse ALJ Morales' decision, the Court need not consider Claimant's remaining argument that the ALJ erred by omitting any consideration of Claimant's mental functioning limitations from the RFC. [Dkt. 19 at 11.] On remand, the ALJ shall take care to ensure all of Claimant's impairments, both severe and non-severe, are accounted for in the RFC and a logical bridge is built between the evidence and those findings.